# CIRCUIT COURT OF HENRICO COUNTY

Commonwealth of Virginia

    v.

Roderick DePriest

June 22, 2007

Case Nos. CR 07-1351F, 07-1352F,
07-1353F, 07-1354F

BY JUDGE CATHERINE C. HAMMOND

The Defendant, Roderick DePriest, moves to suppress evidence obtained by the police after they stopped the car he was driving. Mr. DePriest argues that the stop violated his Fourth Amendment right to be free from unreasonable seizure by government agents. Mr. DePriest challenges a basis for the seizure that has not been addressed directly by our appellate Courts, the police officer's discretionary and suspicionless use of a database maintained by the Virginia Department of Motor Vehicles (DMV).

This Court heard the motion on June 19, 2007. The Commonwealth introduced the testimony of one witness, Officer Mack of the Henrico Police Department. Officer Mack was on patrol duty when he saw Mr. DePriest drive past in a Cadillac sedan, at about ten-thirty on the night of February 2, 2007. Mr. DePriest was complying with all rules of the road. After their cars passed, Officer Mack was stopped behind Mr. DePriest at a stop sign. At that time Officer Mack decided to look up records for the Cadillac using the mobile data

terminal (MDT) in his police car. This decision was not based on any Department policy. It was simply a discretionary practice that Officer Mack followed from time to time.

The MDT is a wireless computer that allows Henrico Officers access to a database maintained by DMV. Officer Mack entered the Cadillac's license plate number into the MDT by touch screen. This immediately provided a variety of information about the registered owner of the Cadillac, including the owner's address, date of birth, and social security number and whether his operator's license was valid. The MDT identifies whether the vehicle is reported stolen and whether the registration is current. The MDT makes an audible signal if the registered owner is wanted for arrest. Here, Officer Mack testified, he got a "NCIC hit." This meant that an outstanding warrant for the arrest of the Cadillac's owner was recorded in the National Crime Information Center. It was Officer Mack's experience that a "NCIC hit" was usually a felony charge.

Officer Mack investigated further as he followed the Cadillac but did nothing to stop it. He tried to determine whether the driver was likely to be the person wanted for arrest. He examined the warrant itself to find out the gender of the wanted person. It was male. This matched the gender of the person Officer Mack had seen drive past him in the Cadillac. He also compared the social security number on the arrest warrant with the social security number of the Cadillac's registered owner. It matched. Because the warrant was for a weapons charge, Officer Mack called for assistance. By this time, Mr. DePriest had parked near a residence. After the second Officer arrived, Mr. DePriest was detained.

The decision to stop the Cadillac was based on the reasonable and articulable suspicion that the driver was wanted for arrest on a felony charge. Officer Mack did not know for certain that Mr. DePriest, the driver, was the wanted person. However, Officer Mack did have a description of the wanted person as male. And, he had a match between the social security number of the wanted person and the registered owner of the Cadillac. It was not unreasonable to infer that the driver of the car was its owner. The Defendant argues that these connections between car and driver were not enough, but I find that once Office Mack had the warrant, the evidence to support the stop was very strong. Thus the more serious issue advanced by the Defendant is whether Officer Mack could lawfully access the Cadillac's records through the MDT, when he had no suspicion of any wrongdoing by the driver and no other reason to stop the car.

The Commonwealth argues that Mr. DePriest had no expectation of privacy in either the license plate information or the DMV database available through the MDT. The Defendant argues that Mr. DePriest had privacy interests in both, and that the use of a computer database to acquire information about drivers through their license plate numbers, randomly and without any heightened suspicion, conflicts with the Fourth Amendment principles expressed in *Delaware v. Prouse*, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979).

The Fourth Amendment applies if a person has an actual expectation of privacy and if that expectation is one that our society recognizes as reasonable. *Katz v. United States*, 389 U.S. 347, 361, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). "What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Id.* at 351. The ownership and operation of motor vehicles is heavily regulated in Virginia. *See* Va. Code §§ 46.2-200 *et seq*. Examining just some of these laws leads to the conclusion that it would not be reasonable for a Virginia motorist to have an expectation of privacy in the license plate information exposed on the front and back of his car. The very purpose of the license plate is to identify the vehicle openly for the enforcement of laws relating to safety and the protection of property. I do not find that any expectation of privacy, under *Katz*, exists in a license plate number openly displayed on a motor vehicle.

The next consideration is the DMV database. The Commonwealth argues, with supporting authority from other jurisdictions, that the database information also is not private, for many of the same reasons. That is, the licensed driver and registered owner cannot expect that DMV will keep this data private. The government has public purposes in maintaining the DMV database, and drivers and owners should know that. One purpose is to make information about outstanding warrants and suspended operator's licenses readily available to officers carrying out legitimate law enforcement duties. *See United States v. Ellison*, 462 F.3d 557, 562 (6th Cir. 2006). The arrest warrant itself is a public document, and the MDT technology is just a way to find the warrant more quickly. Electronically inquiring into a written record does not interfere with ownership or movement of a vehicle. Nevertheless, to conclude that there is no reasonable expectation of privacy in the DMV records would essentially ignore the provisions of Va. Code § 46.2-208(A).

Defendant argues that an objective or reasonable expectation of privacy is created by § 46.2-208(A), which governs "personal information" stored by DMV. "Personal information" is broadly defined by statute to include nearly every fact related to either a driver or a registered vehicle, including any data on a driver's license status or criminal history. The registered owner's address

and other identifying information are privileged. However, a record deemed "privileged" under the statute can be released under particular exceptions. Pursuant to an exception, "personal information" can be released at the request of a law-enforcement officer and DMV "shall" supply information "as the federal, state, or local law-enforcement officer . . . may require in order to carry out its official functions." Va. Code § 46.2-208(B)(9a).

According to the evidence, Officer Mack was performing routine patrol duty on a public highway when he observed the Defendant driving and ran the electronic DMV inquiry on the visible license plate number. There is no evidence, or even any argument, that the police targeted the Defendant for any impermissible reason. It appears to me to be essentially undisputed that Officer Mack was performing his "official function" when he checked the DMV records for the Cadillac. This official access to the DMV database is permitted by § 46.2-208(B)(9a). Under these facts, any expectation of privacy created by § 46.2-208(A) is overcome by the statutory exception for law enforcement functions, and Officer Mack obtained the information without intruding upon any constitutionally protected area. His request to DMV was limited in the way that the Commonwealth prescribed by statute, and the Commonwealth's vital interest in promoting public safety is sufficient to justify the limited access to "personal information" set forth in § 46.2-208(B)(9a). The information supplied by DMV, an outstanding arrest warrant for the registered owner of the Cadillac, then gave rise to sufficient reason to stop the car. For these reasons the motion to suppress will be overruled.